# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

ROBERT BROWN,

Plaintiff,

v.

SAN DIEGO STATE UNIVERSITY FOUNDATION, a California non-profit corporation; BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, an unknown entity; and DOES 1 through 100, inclusive,

Defendants.

CASE NO. 3:13-cv-2294-GPC-NLS

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

**[REDACTED]**

**[ECF No. 22]**

## I. INTRODUCTION

Before the Court is Defendants San Diego State University Research Foundation (the "Foundation") and Board of Trustees of the California State University's ("CSU") (collectively, "Defendants") Motion for Summary Judgment or, Alternatively, Partial Summary Judgment. (ECF No. 22.) Plaintiff Robert Brown ("Plaintiff") filed an opposition. (ECF No. 29.) Defendants responded. (ECF No. 36.)

The parties have fully briefed the motion. (ECF Nos. 22, 29, 36.) The Court finds the motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Upon review of the moving papers, admissible evidence, and applicable law,

the Court finds that the report of Clark E. Smith, M.D. ("Dr. Smith") raises an issue of material fact as to the validity of Plaintiff's release of his rights. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment.

## II. PROCEDURAL BACKGROUND

On July 31, 2013, Plaintiff filed a complaint against Defendants in San Diego Superior Court alleging discrimination, failure to accommodate, harassment, retaliation, wrongful termination, and intentional infliction of emotional distress. (ECF No. 1-2, Ex. A.) On September 25, 2013, Defendants removed the case to the United States District Court for the Southern District of California. (ECF No. 1.) On September 30, 2013, this case was transferred to the Honorable Gonzalo P. Curiel. (ECF No. 5.) On February 7, 2014, Plaintiff filed a first amended complaint ("FAC"). (ECF No. 18.)

On June 16, 2014, Defendants filed a motion for summary judgment or, alternatively, partial summary judgment. (ECF No. 22.) On July 18, 2014, Plaintiff filed an opposition to Defendants' motion. (ECF No. 30.) On August 8, 2014, Defendants replied to Plaintiff's opposition. (ECF No. 34.)

## III. FACTUAL BACKGROUND

In 1996, Plaintiff received a master's degree from San Diego State University. (Brown Depo.[1] 46:16–19, 48:6–8.) In 2007, Plaintiff received a doctorate from the University of San Diego. (Id. 48:22–49:5.) By 2012, Plaintiff had approximately twenty-six years of experience in human resources and risk management.(Id. 88:25–89:6, 89:13–19.) Plaintiff's work experience dealt with employment claims including discrimination, retaliation, harassment, the Family and Medical Leave Act, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq., ("ADA"), wrongful termination, emotional distress, and other federal and state laws and regulations. (Id. 77:17–21, 87:25–88:5, 89:20–90:12.) Plaintiff's work experience also included

---

[1]ECF Nos. 25-2, 25-3.

settlement negotiations and reviewing and revising settlement agreements, including agreements that contained a general release of all claims. (Id. 98:9–19, 98:23–99:4, 100:10–21, 100:22–101:7, 104:16–20.) Plaintiff is also trained as a mediator, has performed mediations, and has attended more than ten mediations. (Id. 91:1–3, 91:15–93:1, 96:4–7.)

In 2002, the Foundation hired Plaintiff as Risk Manager. (Id. 86:6–10.) In 2009, the Foundation promoted Plaintiff to Director of Human Resources and Risk Management. (Id. 87:6–8.) In July 2011, Plaintiff filed a complaint with the United States Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") alleging discrimination by the Foundation. (Id. 119:9–12.) In July 2011, Plaintiff retained Alvin Gomez ("Gomez") as his attorney. (Id. 116:4–10.) In April 2012, Plaintiff threatened to file a lawsuit against the Foundation alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., ("Title VII") violations, violations of the California Fair Employment and Housing Act ("FEHA"), and emotional distress. (Id. 174:20–175:4.)

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████ On June 11, 2012, Plaintiff and the Foundation participated in a mediation. (ECF No. 22-11, Ex. 21.) At the mediation, Plaintiff and the Foundation were represented by counsel. (Id.;

1  Brown Depo. 224:10–16.) Prior to the mediation starting, Plaintiff, the Foundation, and

2  the mediator signed a confidentiality agreement (the "Confidentiality Agreement").

3  (ECF No. 22-9, Ex. 11.) The Confidentiality Agreement states that:

> All statements made during the course of the mediation or in mediator
> follow-up thereafter at any time prior to complete settlement of this matter
> are privileged settlement discussions, are made without prejudice to any
> party's legal position, and are non-discoverable and inadmissible for any
> purpose including in any legal proceeding.

7  (Id.)

8  During the mediation, Plaintiff was presented with a settlement agreement (the

9  "Settlement Agreement"). (ECF No. 22-9, Ex. 8.) The Settlement Agreement included

10  a provision releasing Plaintiff's claims against Defendants (the "General Release"). (Id.

11  ¶ 3.6.) The Settlement Agreement included a provision allowing Plaintiff to rescind the

12  agreement as to certain claims (the "Rescission Provision"). (Id. ¶ 3.14.) Plaintiff

13  skimmed the Settlement Agreement and then signed it. (Brown Depo. 240:6–12.)

14  Around the time that Plaintiff signed the Settlement Agreement, Plaintiff had a

15  "heated" discussion with Gomez. (Id. 244:2–13, 245:2–19, 245:25–246:15.) After the

16  mediation, Plaintiff returned home and realized that the Rescission Provision did not

17  apply to all the claims. (Id. 250:22–251:22.)

18  On July 9, 2012, Plaintiff started seeing Dr. Smith, a psychiatrist. (Smith Decl.

19  ¶ 2.) On October 30, 2012, Dr. Smith released a report diagnosing Plaintiff with ███

20  ████████████████████████████████████████████████. (Id.

21  ¶ 5.) Dr. Smith based his October 30, 2012 report on his review of: ████████████

22  ████████████████████████████████████████████████

23  ████████████. (ECF No. 33-4, Ex. 2, at 1.) After two years of treating Plaintiff, Dr.

24  Smith updated his diagnosis to ████████████████████████████████

25  ████████████████. (Id. ¶¶ 6, 7.) Dr. Smith opined that Plaintiff's

26  ████ was triggered during the mediation. (Id. ¶ 8.) On May 23, 2014, Dr. Smith

27  released a report stating that, on June 11, 2012, the settlement conference triggered ███

28  ████████████████████████ that made Plaintiff ████████████████████

1  ████████(ECF No. 33-4, Ex. 3, at 5.) Dr. Smith based his May 23, 2014 report on:██

2  ████████████████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████. (Id. at 1.)

5      Plaintiff alleges 21 causes of action against Defendants: (1) race discrimination

6  in violation of FEHA; (2) race discrimination in violation of 42 U.S.C. § 1981 ("§

7  1981"); (3) disability discrimination in violation of FEHA; (4) age discrimination in

8  violation of FEHA; (5) failure to reasonably accommodate in violation of FEHA; (6)

9  failure to engage in the interactive process in violation of FEHA; (7) harassment in

10  violation of FEHA; (8) retaliation in violation of FEHA; (9) retaliation in violation of

11  § 1981; (10) failure to prevent in violation of FEHA; (11) retaliation in violation of

12  California Labor Code § 1102.5; (12) wrongful termination in violation of public

13  policy; (13) intentional infliction of emotional distress; (14) interference with rights

14  protected by the federal Family and Medical Leave Act and California Family Rights

15  Act; (15) race discrimination in violation of Title VII; (16) harassment in violation of

16  Title VII; (17) failure to prevent in violation of Title VII; (18) retaliation in violation

17  of Title VII; (19) disability discrimination in violation of the ADA; (20) retaliation in

18  violation of the ADA; and (21) age discrimination in violation of the Age

19  Discrimination in Employment Act ("ADEA"). (FAC.)

20      Defendants now move for summary judgment on their affirmative defense of

21  waiver and release in regards to all causes of action except the Fourth and Twenty-First

22  Causes of Action for age discrimination. (ECF No. 22, at 2.)

23      **IV. LEGAL STANDARD**

24      Federal Rule of Civil Procedure 56 empowers the Court to enter summary

25  judgment on factually unsupported claims or defenses, and thereby "secure the just,

26  speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477

27  U.S. 317, 325, 327 (1986); FED. R. CIV. P. 56. Summary judgment is appropriate if the

28  "pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. Id. at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the Court need not consider the nonmoving party's evidence. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citing FED. R. CIV. P. 56 (1963)). If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. Id. at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing FED. R. CIV. P. 56 (1963)). In making this determination, the Court must "view [] the evidence in the light most favorable to the nonmoving party." Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001). The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. Anderson, 477 U.S. at 255.

## V. DISCUSSION

### A. Confidentiality Agreement

Defendants argue that the Confidentiality Agreement bars the admission of any evidence stemming from the mediation. (ECF No. 25, at 3.) Plaintiff does not offer any reason why the Court should disregard the Confidentiality Agreement and consider what occurred during the mediation. The Confidentiality Agreement precludes Plaintiff from introducing any statements made during mediation. See Facebook, Inc. v. Pac. Nw. Software, Inc., 640 F.3d 1034, 1041 (9th Cir. 2011) (enforcing a similar agreement). Accordingly, the Court will disregard any evidence of statements made during mediation and any references to such statements.[2]

**B. Contract Defenses**

Under California law, a contract is rescindable if it was obtained through duress, fraud, or undue influence by the party as to whom the rescinding party wishes to rescind. CAL. CIV. CODE § 1689. The FAC alleges that the Settlement Agreement was obtained under "duress, undue influence, and false pretenses" by Plaintiff's attorney, not by Defendants. (FAC ¶ 15.) As Plaintiff has not raised any evidence showing duress, undue influence, or false pretenses by Defendants in procuring the Settlement Agreement, the Court finds that duress, fraud, and undue influence do not bar the Settlement Agreement.

**C. Release Validity**

The Court must first determine which body of law governs the General Release's validity. Defendants argue that the Settlement Agreement's choice-of-law provision, (ECF No. 22-9, Ex. 8 ¶ 3.9), requires that California law govern the General Release's validity. (ECF No. 38, at 5.) In the absence of the choice-of-law provision, the parties dispute whether federal law or state law applies to the General Release. (See ECF No. 25, at 8; ECF No. 33, at 11.)

**1. Choice-of-Law Provision**

The choice-of-law provision states that "[t]his Settlement Agreement and

---

[2] As the Confidentiality Agreement bars mediation evidence, the Court need not reach the question of whether California or federal evidentiary rules control the admissibility of mediation evidence in this case.

General Release shall be interpreted under the laws of the State of California." (ECF No. 22-9, Ex. 8 ¶ 3.9.) The Ninth Circuit has cautioned that choice-of-law provisions do not apply to the validity of a release of federal rights because federal rights "could be easily defeated if state law could be used to control the incentives of those rights and the defenses to them." See United States v. Northrop Corp., 59 F.3d 953, 960–62 (9th Cir. 1995) (citations omitted); see also Daugherty v. MAPCO Exp., Inc., No. 1:10-CV-2092-KOB, 2012 WL 2357732, at *13–14 (N.D. Ala. June 19, 2012). Accordingly, the Court finds that the Settlement Agreement's choice-of-law provision does not control the law governing the General Release's validity.

**2. Federal Law**

The validity of a release of federal rights is determined by federal law. Northrop, 59 F.3d at 960; Stroman v. W. Coast Grocery Co., 884 F.2d 458, 459 (9th Cir.1989), cert. denied, 498 U.S. 854 (1990). This holds true even in cases where both federal and state rights are released. See, e.g., Ryles v. Palace Hotel, No. C-04-5326-SBA, 2006 WL 2850025, at *2 n.2 (N.D. Cal. Oct. 4, 2006); Aikins v. Tosco Refining Co., No. C-98-00755-CRB, 1999 WL 179686, at *1–2 (N.D. Cal. Mar. 26, 1999). Under federal law, a release of claims must be "voluntary, deliberate, and informed." Stroman, 884 F.3d at 462 (citations omitted).[3] In determining whether a release was voluntary, deliberate, and informed, the Court considers objective and subjective factors including: (1) the clarity and lack of ambiguity in the agreement; (2) the plaintiff's education and business experience; (3) whether there was a non-coercive atmosphere surrounding the execution of the agreement; and (4) whether plaintiff was represented by legal counsel. Dominguez v. BCW, Inc., 99 F. Supp. 2d 1155, 1159–60 (D. Ariz. 2000) (citing Stroman, 884 F.2d at 462). As the parties do not dispute that Plaintiff released federal claims in the General Release, the Court now applies Stroman to

---

[3] Additionally, a release must be supported by consideration. Salmeron v. United States, 724 F.2d 1357, 1362 (9th Cir. 1983). As Plaintiff does not argue that the Settlement Agreement was not supported by consideration, the Court need not consider whether Plaintiff received sufficient consideration.

determine whether the General Release was valid. See Ryles, 2006 WL 2850025, at *2 n.2.

### a. Clarity and Lack of Ambiguity

Plaintiff argues that the Rescission Provision is ambiguous as to whether Plaintiff could rescind the agreement as to all of his claims or just his age discrimination claims. (ECF No. 33, at 14–15.) The Rescission Provision states that:

> Brown represents that he has seven (7) days immediately following the date on which he executed this Agreement to revoke its terms, and all of them with regard to any claim of age discrimination. This Agreement shall not become binding or effective until the eighth day following Brown's execution of it (the "Effective Date"). In the event Brown invokes his right of revocation, he is only entitled to revoke as to any age discrimination claim he may assert. All terms and conditions in this Agreement remain in full force and effect.

(ECF No. 22-9, Ex. 8 ¶ 3.14.) Plaintiff argues that the second sentence of the Rescission Provision is ambiguous as to whether Plaintiff can rescind the Settlement Agreement as to all of his claims or just his age discrimination claims. However, the sentences immediately preceding and immediately following the second sentence make clear that Plaintiff can rescind the Settlement Agreement only as to his age discrimination claims. Accordingly, when viewed in the context of the entire Rescission Provision, the Settlement Agreement is unambiguous as to which claims Plaintiff can rescind.

### b. Plaintiff's Education and Business Experience

Defendants argue that Plaintiff is highly educated and experienced based on his postgraduate education and his decades of business experience in human resources and risk management. (ECF No. 25, at 22.) Plaintiff instead argues that his previous business experiences led him to believe that the Settlement Agreement could be rescinded in full. (ECF No. 15–16.) Plaintiff's assumption based on his previous experiences does not take away from his education or experience, nor does it take away the fact that his experiences should have stressed to him the importance of carefully reading legal documents. In light of Plaintiff's two postgraduate degrees, his decades of experience in human resources, and his previous experience with mediation and

1  litigation, the Court finds that Plaintiff is both highly educated and highly experienced.

2  **c. Non-Coercive Atmosphere**

3  As discussed above, the Confidentiality Agreement bars the admission of any
4  evidence surrounding the mediation and thus Plaintiff has not proffered any admissible
5  evidence showing a coercive atmosphere. Accordingly, the Court finds that the
6  atmosphere surrounding Plaintiff's release was not coercive.

7  **d. Representation by Legal Counsel**

8  Though Plaintiff points to inadmissible evidence regarding his counsel's
9  effectiveness, it is undisputed that Plaintiff was represented by legal counsel.
10  Accordingly, the Court finds that Plaintiff was represented by legal counsel.

11  **e. Other Factors**

12  The factors laid out in <u>Stroman</u> do not end the Court's analysis as other
13  "objective and subjective factors" can bear on whether Plaintiff's release was
14  "voluntary, deliberate, and informed." <u>See</u> <u>Stroman</u>, 884 F.2d at 462 (citing <u>Jones v.</u>
15  <u>Taber</u>, 648 F.2d 1201, 1203 (9th Cir. 1981)). Plaintiff argues that the Court should
16  consider: "(1) whether the plaintiff had any input in negotiating the terms of the
17  settlement agreement, (2) the amount of time he had for deliberation before signing it,
18  (3) whether he actually read and considered its terms before signing, and (4) the
19  plaintiff's state of mind." (ECF No. 33, at 19.) The first three additional factors do not
20  bear on Plaintiff's ability to comprehend the General Release and are thus immaterial.
21  As for the fourth additional factor, Plaintiff cites ███████████████████████████
22  ████████████████████████████████████████████████████████████████████████
23  ████████████████████████████████████████████████████████████████████████
24  ████████████████████████████████████████████████████████████████████████
25  ████████████████████████████████████████████████████████████████████████
26  ██████████████████████████████████. (ECF No. 33, at 19–21.)

27  Citing <u>Gaub v. Professional Hospital Supply, Inc.</u>, 845 F. Supp. 2d 1118 (D.
28  Idaho 2012), and <u>Taylor v. Kaiser Found. Health Plan of the Nw.</u>, No.

3:11-cv-1551-ST, 2012 WL 6872629 (D. Or. Nov. 7, 2012), <u>adopted by</u> No. 3:11-cv-1551-ST, 2013 WL182877 (D. Or. Jan. 17 2013), Defendants argue that Dr. Smith's report is "conclusory" and thus does not raise a dispute of material fact. (ECF No. 38, at 9–10.) However, the present case is distinguishable from both <u>Gaub</u> and <u>Taylor</u>.

In <u>Gaub</u>, the plaintiff's doctor submitted a letter stating that plaintiff was "most likely not capable of making a rational and informed decision at [the time she signed the release]." 845 F. Supp. 2d, at 1132 (modification in original) (citation omitted). The doctor had not treated the plaintiff until nine months after she signed the release and, during his deposition, stated that the letter was "merely his 'interpretation' of [the plaintiff's] statement to him that she signed the agreement while intoxicated." <u>Id.</u> The <u>Gaub</u> court found that the "interpretation" was inadmissible because it was not based on sufficient facts or data as required by Federal Rule of Evidence 702. <u>Id.</u> (citing FED. R. EVID. 702). In contrast to <u>Gaub</u>, Dr. Smith started treating Plaintiff less than one month after the mediation. Dr. Smith's opinion on Plaintiff's state of mind on June 11, 2012 is also based on more facts than those used by the doctor in <u>Gaub</u>.

In <u>Taylor</u>, the plaintiff stated that "she was in poor health on the day of the mediation due to asthma, bronchitis, diabetes, a fever, and difficulty walking." 2012 WL 6872629, at *8. The <u>Taylor</u> court found that "[s]imply because [the plaintiff] was not feeling well . . . is not sufficient to nullify her assent to an otherwise binding, enforceable [a]greement." <u>Id.</u> <u>Taylor</u> is distinguishable from the present case because the symptoms alleged by the <u>Taylor</u> plaintiff differ markedly from Dr. Smith's assessment of Plaintiff. The symptoms alleged by the <u>Taylor</u> plaintiff were all physical and presented no indication that they would affect her ability to understand the release. Here, ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████Viewing this evidence in the light most favorable to Plaintiff, the Court concludes that there remains a genuine issue of fact as to Plaintiff's ability to understand the Settlement Agreement.

### f. Totality of the Circumstances

While the four <u>Stroman</u> factors weigh in favor of Defendants, the Court must consider the totality of the circumstances surrounding Plaintiff's release. <u>See</u> <u>Dominguez</u>, 99 F. Supp. 2d at 1159.████████████████████████████ ████████████████████████████████raise issues of material fact as to whether Plaintiff's release was voluntary, deliberate, and informed. <u>See</u> <u>Aikins</u>, 1999 WL 179686, at *4.

### VI. CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment or, Alternatively, Partial Summary Judgment, (ECF No. 22), is **DENIED**.

DATED:  October 7, 2014

HON. GONZALO P. CURIEL
United States District Judge